Meyer, J.
(dissenting). The fallacy in the reasoning of the Appellate Division and of the majority in this court is in their failure to distinguish between those who are entirely exempt from the liability insurance requirements of the Vehicle and Traffic Law and, consequently, from the uninsured motorists insurance requirement of subdivision 2-a of section 167 of the Insurance Law, and those who, though subject to liability insurance requirements, are permitted, upon demonstration of financial responsibility, to self-insure. Matter of New York City Tr. Auth. (Thom) (52 NY2d 1032) decided no more than that the Transit Authority did not qualify as a political subdivision exempted under subdivision 1 of section 370 of the Vehicle and Traffic Law and was, therefore, as a self-insurer, required to provide uninsured motorists coverage. And while Matter of Allstate Ins. Co. v Shaw (52 NY2d 818, 819) *751 recognized the strong policy concern that innocent victims of motor vehicle accidents be recompensed, analysis of the various financial responsibility provisions enacted by the Legislature establishes beyond cavil that the city, as an exempt municipality, is not required to maintain uninsured motorists coverage. The order of the Appellate Division should, therefore, be reversed and the judgment of Supreme Court, New York County, reinstated.
Legislative policy with respect to the maintenance of insurance covering motor vehicle accidents is contained in Vehicle and Traffic Law, article 6 (Financial Security Act), article 7 (Safety Responsibility Act), article 8, covering passenger for hire vehicles, and article 48-A (Registration of Limited Use Vehicles), in Insurance Law, article 7 (Insurance Contract), article 18 (Comprehensive Automobile Insurance Reparations Act [commonly referred to as “no-fault”]), and article 52 (Motor Vehicle Accident Indemnification Corporation [MVAIC] Act) and in PRHPL 25.13. Perusal of the pertinent sections of those enactments makes indelibly clear that, with but few and quite explicit exceptions, the Legislature has expressly exempted from their coverage the State and any political subdivision of the State.
To understand the legislative scheme, one must first consider the various ways in which persons injured or damaged by a motor vehicle are protected under the law. The method most generally applicable is coverage by a liability insurance policy or bond with limits at least equal to those set forth in section 311 of the Vehicle and Traffic Law. Such a policy must also protect the insured against bodily injury inflicted upon him or her by an uninsured motorist (Insurance Law, § 167, subd 2-a). In lieu of such a policy, a person seeking to register a motor vehicle may provide a financial security bond or deposit with the Commissioner of Motor Vehicles $25,000 in cash or specified securities plus an additional sum fixed by the Commissioner to cover his or her no-fault obligation (Vehicle and Traffic Law, § 311, subds 3, 6, 7). A further alternative for a person who has more than 25 vehicles registered in his or her name and who satisfies the Commissioner of Motor Vehicles that he or she will continue to be possessed of *752 financial ability to respond to judgments arising from operation of the motor vehicle is to become a self-insurer (Vehicle and Traffic Law, § 316). A condition of self-insurance is the payment of a fee of $1.50 per vehicle to be transmitted to the Motor Vehicle Accident Indemnification Corporation.
Articles 18 and 52 of the Insurance Law supplement the above-described protections; article 18, by providing first-party benefits to the owner, operator or occupant of an insured motor vehicle without regard to fault; article 52, by providing the means within specified limits for a person, other than an insured or the owner of an uninsured motor vehicle, to obtain payment of a judgment for personal injury or death obtained against a financially irresponsible person (i.e., one whose liability is not covered by insurance, bond, deposit or self-insurance).
Not all motor vehicle owners are subject to all of the above-described financial responsibility requirements, however, and when the provisions establishing which owners are subject to the various requirements are considered it becomes apparent that a municipality is not obligated to provide uninsured motorists coverage. Thus, the Financial Security Act, which imposes the basic financial responsibility requirement, explicitly exempts “any motor vehicle owned by the United States, any state or any political subdivisions of any state”;[1] section 360 of the Vehicle and Traffic Law makes the Safety Responsibility Act inapplicable to “any motor vehicle owned by the United States, the state or any political subdivision thereof”;[2] and section 370 of article 8 requires the filing of an indemnity bond or insurance policy by anyone engaged in transporting passengers for hire “except street cars, and motor vehicles or motorcycles owned and operated by a municipality”.[3] But *753 subdivision 2 of section 321 expressly states that motor vehicles “exempted in subdivision one of this section * * * shall be subject to the provisions of article eighteen of the insurance law” (i.e., to the no-fault coverage requirement). Moreover, the intent to require no-fault coverage for governmental as well as private vehicles is underscored by subdivision 6 of section 671 of the Insurance Law and subdivision 1 of section 672. By the former the Legislature expressly included within the definition of “motor vehicle” fire and police vehicles, and by the latter it mandated that no-fault first-party benefits be provided for in every liability policy issued in compliance with articles 6 and 8 of the Vehicle and Traffic Law, and imposed liability for such benefits upon every owner who maintains another form of financial security in satisfaction of those articles and upon every owner of a motor vehicle subjected under subdivision 2 of section 321 of the Vehicle and Traffic Law to the provisions of the No-Fault Law.
No-fault coverage is not the only instance illustrative of the Legislature’s intent to be selective as to the financial responsibility requirements governing governmental vehicles. Snowmobiles, because they are excluded from section 125 of the Vehicle and Traffic Law definition of “motor vehicle,” are not subject to the provisions of articles 6, 7 and 8 of the Vehicle and Traffic Law, but, article 47 of the Vehicle and Traffic Law, which provides separately for registration of snowmobiles, requires that a snowmobile owned by a governmental agency, other than the United States, or another State or political subdivision thereof, display a registration number (Vehicle and Traffic Law, § 2222, subds 10, 11) and PRHPL 25.13, which requires liability insurance coverage for any snowmobile operated on the roadway or shoulder of a highway, authorizes the Commissioner of Parks upon application of a governmental to “waive the requirement of insurance by a private insurance carrier and issue a certificate of self-insurance, when he is satisfied that such governmental agency *754 is possessed of financial ability to respond to judgments obtained against it, arising out of the ownership, use or operation of such snowmobile.” The Commissioner of Parks is also authorized by that section to waive the requirement of private insurance of a snowmobile owner other than a governmental agency to which the Commissioner of Motor Vehicles has issued a certificate of self-insurance pursuant to section 316 of the Vehicle and Traffic Law.[5]
The foregoing somewhat tedious recitation establishes that a municipality which owns motor vehicles is neither required to carry private insurance nor to make application to the Commissioner of Motor Vehicles for a certificate of self-insurance,[6] is not within the requirements of the MVAIC Act nor obligated as a self-insurer to contribute to MVAIC operations as other self-insurers are, and is wholly exempted from all financial responsibility requirements of articles 6, 7 and 8 of the Vehicle and Traffic Law, except as to (1) no-fault benefits and (2) snowmobiles for which a self-insurance certificate must be sought, not from the Commissioner of Motor Vehicles (as required of other vehicle owners including snowmobile owners seeking to self-insure) but from the Commissioner of Parks.
Those two specific exceptions demonstrate that when it intended to subject governmental vehicles to insurance requirements the Legislature was well aware of the appropriate method of doing so. They also remove any basis for inferring as to governmental vehicles, as did the Shaw case (on the reasoning of which the majority here and in the Appellate Division rely) with respect to nongovernmental vehicles, a legislative intent to require uninsured motorists coverage for municipally owned vehicles.
Realistically, of course, there will be here no “diminution of protection of highway users,” on which the Shaw memorandum (52 NY2d, at p 820) based its conclusion. The issue *755 here is not whether Daisy Manning will be compensated as to the injury inflicted upon her by an uninsured motorist but whether that compensation will come from her own insurer, Country-Wide, or from the city. That the city because it pays no insurance premiums and is not required to contribute to MVAIC operational assessments bears no part of the burden is simply irrelevant, both because the Legislature clearly so intended and because Daisy Manning paid a premium to Country-Wide for the protection it now seeks to require the city, contrary to the Legislature’s intent, to pick up.
Order affirmed, etc.

. Subdivision 1 of section 321 of the Vehicle and Traffic Law. Subdivision 2 of section 311 also excludes fire and police vehicles from the definition of “motor vehicle” as used in the act, as does section 5202 (subd A, par 1) of the Insurance Law exclude them from the MVAIC Act. Presumably the separate exemption of fire and police vehicles is required because such vehicles, as defined in sections 115-a and 132-a of the Vehicle and Traffic Law may be owned by government or nonprofit entities which would not qualify as the State or a political subdivision of the State.

. Section 359 of the Vehicle and Traffic Law also excludes from the definition of “person” (subd [d]) “the state or any political subdivision thereof” and from the definition of “motor vehicle” (subd [k]) “fire and police vehicles” (as to which see n 1 above).

. By article 48-A of the Vehicle and Traffic Law limited use vehicles, defined by *753 section 121-c of the Vehicle and Traffic Law as a motor vehicle having a maximum performance speed of not more than 40 miles per hour, are made subject to the insurance requirements of articles 6, 7 and 8 of the Vehicle and Traffic Law (Vehicle and Traffic Law, § 2265, subd 3), but police and fire vehicles are expressly exempted from the requirement (Vehicle and Traffic Law, § 2269, subd 1).

. PRHPL 21.05 (subd 1) defines “governmental agency” to “mean any agency of the state of New York and all municipalities within the state.”

. Although, as above noted, a snowmobile is not a “motor vehicle” for other purposes (Vehicle and Traffic Law, § 125), section 316 expressly provides that as to self-insurance “the term ‘motor vehicle’ shall include ‘snowmobiles’ ”,

. A further indication of the Legislature’s intent can be found in subdivision 1 of section 321 of the Vehicle and Traffic Law, and subdivision 1 of section 672 of the Insurance Law. Had it deemed the city an owner which maintained another form of financial security (i.e., a self-insurer) and thus within the latter provision, it need not have explicitly made no-fault applicable to governmental vehicles as those subdivisions explicitly do.